UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
GREGORY JACKSON,

                              Plaintiff,            09-CV-6497T

            v.                                      **DECISION
                                                    and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                              Defendant.
_____

## INTRODUCTION

        Plaintiff Gregory Jackson ("Plaintiff") brings this action
pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the
Act") seeking review of a final decision of the Commissioner of
Social Security ("Commissioner"), denying his application for
Supplemental Security Income ("SSI").

        The Commissioner moves for judgment on the pleadings pursuant
to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") on the
grounds that the Administrative Law Judge's ("ALJ") decision was
supported by substantial evidence. Plaintiff opposes the
Commissioner's motion and cross-moves for judgment on the pleadings
pursuant to Rule 12(c), on grounds that the Commissioner's decision
was erroneous and not supported by substantial evidence in the
record. For the reasons set forth below, I hereby deny the
Commissioner's motion for judgment on the pleadings, grant
Plaintiff's motion for judgment on the pleadings, and remand this

                                1

case to the Social Security Administration for calculation and payment of benefits.

## BACKGROUND

On March 5, 2003, Plaintiff protectively filed an application for SSI alleging disability beginning January 5, 2001. On May 23, 2003, Plaintiff's application was denied. Subsequently, Plaintiff filed a timely request for a hearing on July 22, 2003. Approximately four years later, on June 26, 2007, Plaintiff appeared at a video hearing before ALJ Jan K. Michalski. In a decision dated July, 26, 2007, the ALJ determined that Plaintiff had severe impairments, but he retained the residual functional capacity ("RFC") to perform light work with certain limitations. Two years later, on July 29, 2009, the ALJ's decision became the Commissioner's final decision after the Appeals Council denied Plaintiff's request for review. Upon the denial by the Appeals Council, Plaintiff timely filed the instant action.

## DISCUSSION

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. <u>See</u> <u>Mongeur v. Heckler</u> 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." <u>Lynn v. Schweiker</u>, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters</u>, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff has not plead a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007).

**<u>The ALJ's decision denying Plaintiff's application for disability benefits is not supported by substantial evidence and is based on errors of law.</u>**

In her decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). The ALJ adhered to the Social Security Administration's five-step sequential analysis in determining disability benefits. <u>See</u> 20 C.F.R. § 404.1520. At step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity. If the claimant is not engaged in substantial gainful activity at Step Two, the ALJ considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers from an impairment that is listed in Appendix 1 of Subpart P of the Social Security Regulations, pursuant to Step Three of the analysis, the claimant will be considered disabled without considering other factors. If the claimant does not have a listed impairment, the ALJ will move to Step Four of the analysis and determine whether or not the claimant, despite his impairments, retains the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform any past work, at Step Five of the analysis, the ALJ will determine whether the claimant can perform other work in the local or national economy.

Here, at Step One of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the

4

alleged disability onset date of January 5, 2001. (Transcript of Administrative Proceedings at 18 ("Tr."). At Steps Two and Three, the ALJ concluded that Plaintiff's impairments, which include disorders of the back (discogenic and degenerative), affective disorders, depression, and drug addiction/alcohol abuse, were "severe" within the meaning of the Regulations. However, the ALJ concluded that Plaintiff's impairments did not meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P. (Tr. at 18).

Under Steps Four and Five of the sequential analysis, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work within the meaning of the regulations with the following limitations: he can do no climbing of ropes/ladders/scaffolds and must have limited contact with the general public. (Tr. at 20). At Step Four, the ALJ found that even without the drug addiction/alcohol abuse, Plaintiff is unable to perform any of his past relevant work. (Tr. at 22). At Step Five, considering the claimant's age, education, work experience, and RFC, and absent drug addiction/alcohol abuse, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Specifically, the ALJ found that Plaintiff could work at light, low stress, routine jobs. (Tr. at 22).

5

**The Treating Physician's Rule**

A thorough examination of the record demonstrates that William S. Beckett, M.D., and Berthollet Bavibidila, M.D., two of the Plaintiff's treating physicians, rendered opinions which should have been given controlling weight under the treating physician rule. Pertinent evaluations from each physician's course of treatment with the Plaintiff are discussed below.

**Dr. Beckett**

Plaintiff has an extensive well-documented treatment history with Dr. Beckett. Between August 2001 and January 2005, Plaintiff was examined by Dr. Beckett approximately twenty times. Plaintiff first presented to Dr. Beckett on August 7, 2001. At this initial examination, Dr. Beckett documented an extensive history of Plaintiff's condition, noting the existence of a back problem with origins from his work performing manual labor at the Town of Gates Highway Department. (Tr. at 206). After conducting a physical examination, Dr. Beckett opined that Plaintiff had persistent low back pain and pain in his calf concluding that Plaintiff was temporarily permanently disabled. (Id.).

After conducting a physical examination on October 23, 2001, Dr. Beckett opined that Plaintiff had symptomatic lumbar degenerative disc disease and thromboembolism[1] in the left femoral

---

[1]Thromboembolism is an embolism from a "clot in the cardiovascular systems formed during life from constituents of blood." Thomas L. Stedman, Stedman's Medical Dictionary, 1984-85

artery. (Tr. at 201). On, November 28, 2001, while seeking treatment for the degenerative disc disease and blood clot, Dr. Beckett opined that Plaintiff had reached "maximum medical improvement" and had a "moderate 50% permanent partial disability of the spine due to work-related degenerative disc disease." (Tr. at 199-200). Dr. Beckett encouraged him to seek job training so that he could work within his restriction. (Id.).

After seeing Plaintiff on December 12, 2001 and March 12, 2002, Plaintiff presented to Dr. Beckett on June 3, 2002. After physical examination, Dr. Beckett opined that Plaintiff had degenerative disc disease of the lumbar spine, a left ankle sprain, intermittent pain and locking in his left elbow, and pain in his calf. On July 8, 2002, Dr. Beckett noted that Plaintiff had been following his treatment program and was in stable condition. Plaintiff was given a work slip to return to work for a trial run without limitations. (Tr. at 194). On July 19, 2002, after attempting to return to unrestricted work, Plaintiff returned to Dr. Beckett exhibiting a recurrence of his work-related back injury. (Tr. at 193). Dr. Beckett concluded that it would not be "safe for him" to return to work in that current position. (Id.). According to Dr. Beckett, Plaintiff was still partially disabled. (Id.).

---

(28th ed. 2006).

Dr. Beckett examined Plaintiff on August 5, 2002, and found that Plaintiff had an exacerbation of degenerative disc disease of the spine related to his work injury and that Plaintiff was still temporarily disabled. (Tr. at 192).   On September 19, 2002, Plaintiff presented to Dr. Beckett and was given a permanent work restriction due to Plaintiff's maximum medical improvement regarding the degenerative disc disease of the spine. (Tr. at 190). Plaintiff had a moderate marked 50% permanent partial disability of the lumbar spine, with a 15 pound lifting restriction. (Id.). His work restrictions were as follows: He must be able to stand or walk at will and without uninterrupted sitting, no long distance walking, limited bending, squatting and stooping; no crawling, climbing heights, or kneeling, lifting restriction of no more than 15 pounds, and pushing and pulling restrictions of no more than 50 pounds. At this point, Plaintiff also had a mild 7.5% permanent partial disability of the right ankle, and a mild 10% permanent partial disability of the left elbow. (Tr. at 191).

On November 18, 2002, Plaintiff was evaluated by Dr. Beckett for his degenerative disc disease of the lumbar spine, thromboembolism of the left femoral artery, ankle sprain, and elbow pain. (Tr. at 188). However, Dr. Beckett noted that Plaintiff "is now presenting with new symptoms of depression, which I believe are due to chronic pain and loss of function." (Id.). Plaintiff was

referred to a social worker for his "reactive depression due to pain and loss of function." (Id.).

On April 21, 2003, Plaintiff was seen by Dr. Beckett who made two new observations. First, Plaintiff had a new diagnosis of diabetes. Second, Dr. Beckett stated "[m]ost important now is treatment of [Plaintiff's] depression, which is in part related to his work-related injury, but for which he has a previous history."(Tr. at 186). He referred Plaintiff to Park Ridge Hospital Mental Health for psychological and psychiatric treatment. (Id.) On June 11, 2003, during a follow-up examination, Dr. Beckett noted that Plaintiffs reactive depression had become more severe and was very active. (Tr. at 395).

Plaintiff was seen by Dr. Beckett on January 13, 2004 (Tr. at 398) and again on May 18, 2004 (Tr. at 344), when he noted Plaintiff's five day hospitalization in a psychiatric unit for his active, severe depression. (Id.). Dr. Beckett opined that although he was still permanently partially disabled from his work related injuries, Plaintiff's most limiting factor was now his reactive depression. (Id. at 345).

Dr. Beckett saw Plaintiff on August 6, 2004 (Tr. at 342) and on December 20, 2004 and concluded that Plaintiff was temporarily partially disabled due to his reactive depression from chronic pain and loss of function. (Tr. at 339). On January 31, 2005, Dr. Beckett met with Plaintiff and opined that Plaintiff's

disability status had not changed and that he remains totally disabled in large part, due to his depression. (Tr. at 347).

Plaintiff was seen by Dr. Beckett on June 7, 2007, for a social security evaluation. (Tr. at 316). Dr. Beckett stated that he needed additional information from certain sources to complete his evaluation. (Id.). On June 19, 2007, Dr. Beckett completed an RFC evaluation. (Tr. at 400). On July 13, 2007, after reviewing all of the information available to him, Dr. Beckett concluded that Plaintiff has been totally disabled since January 19, 2004 and that "neither alcohol nor drug use has significantly caused any portion of [Plaintiff's] disability during these periods." (Tr. at 405).

**Dr. Bavibidila**

Dr. Bavibidila was Plaintiff's primary care physician and was responsible for referring Plaintiff to Dr. Beckett. (Tr. at 178). On February 14, 2001, Plaintiff was seen by Dr. Bavibidila for cardiomyopathy and hypertension. (Tr. at 184). Dr. Bavibidila noted that the "[c]ardiomyopathy, multifactorial, most likely related to alcohol abuse and uncontrolled hypertension" and that "[p]atient has stopped smoking and drinking alcohol." (Id.). Dr. Bavibidila met with Plaintiff on May 9, 2001 and on June 6, 2001 and noted that Plaintiff was an "ex-heavy smoker," "ex-heavy alcohol user," and "[e]x-cocaine user." (Tr. at 180). Due to work-related low back pain, on July 3, 2001, Dr. Bavibidila opined that Plaintiff was totally disabled until further evaluation. (Tr. at 178).

10

Plaintiff was seen by Dr. Bavibidila for a pneumonia-related examination on March 22, 2002 (Tr. at 174), Plaintiff was seen later by Dr. Bavibidila on July 16, 2002. During this evaluation, Dr. Bavibidila noted pain and numbness in Plaintiff's feet, work-related low back pain, hypertension, and cardiomyopathy. Dr. Bavibidila recorded that Dr. Beckett was closely following up with Plaintiff. (Tr. at 172). Plaintiff next met with Dr. Bavibidila on November 16, 2002 who noted that Plaintiff's hypertension was uncontrolled due to a week long non-compliance with medication. On March 5, 2003, Dr. Bavibidila confirmed that plaintiff had hypertension, obstructive sleep apnea, morbid obesity, and pain in his feet.

After approximately a year long gap in the record between treatments, Plaintiff was seen by Dr. Bavibidila on April 4, 2004 at which time he updated Plaintiff's medical history to include hypertension, obesity, depression, osteoarthritis, work related back pain, history of thromboembolism, renal failure, and a history of depression. (Tr. at 358).

The record reflects that Plaintiff continued to meet with Dr. Bavibidila throughout 2004, 2005, and 2006. During this period, Dr. Bavibidila noted, among other medical issues, a hypercoagulable state involving both arteries (Tr. at 328), the need for vascular surgery to correct peripheral vascular disease (Tr. at 377), left eye blurred vision (Tr. at 377), vein occlusion in the left eye

(Tr. at 386), and a history of depression (Tr. at 390). On November 11, 2006, Dr. Bavibidila stated that Plaintiff should apply for social security benefits. (Tr. at 325).

**Application of the treating physician rule**

Having reviewed the record relevant to Plaintiff's medical history with Dr. Beckett and Dr. Bavibidila, this Court concludes that the ALJ misapplied the treating physician rule in failing to give their opinions controlling weight.

The treating physician rule requires that a medical opinion given by a claimant's treating physician should be "given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(d). If the ALJ decides not to give controlling weight to a treating physician's opinion, he must provide "good reasons" for discounting the opinion. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). Should the ALJ decide to discount the treating physician's opinion, he must examine the following factors to determine how much weight to afford to the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the treating physician presents relevant evidence to support an opinion, particularly medical signs and laboratory findings; (4) whether the treating physician's opinion is

consistent with the record as a whole; (5) whether the treating physician is a specialist in the area relating to his opinion; and (6) other factors which tend to support or contradict the opinion. Shaw, 221 F.3d at 134; see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Next, "[a]fter considering the factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008).

The ALJ discounted both Dr. Beckett's and Dr. Bavibidila's opinions on the basis that "there [was] no evidence showing that the claimant [had] [overcame] his chronic/alcohol addiction." (Tr. at 22). The ALJ's "good reason" for discounting Dr. Beckett's opinion is not supported by the medical evidence in the record and both physician's opinions should have been accorded controlling weight. Dr. Beckett's treatment history is well documented covering the period August 2001 to January 2005 during which he examined Plaintiff 20 times. Plaintiff also met with Dr. Bavibidila (his primary care physician) starting February 14, 2001 to November 11, 2006

The record contains ample objective medical evidence from both treating physicians, Dr. Beckett and Dr. Bavibidila, that Plaintiff's disability is occasioned by his extensive, serious medical problems and that his alcohol consumption and prior drug use played no part in determining his disability. See (Tr. at 180)

13

(Plaintiff was described as an "ex-heavy drinker" or "ex-drug user."); ("neither alcohol nor drug use has significantly caused any portion of [Plaintiff's] disability during these periods."). (Tr. at 405).

In deciding to discount the treating physicians' opinions, the ALJ does not cite to any supportive medical evidence in determining that Plaintiff's alcohol or drug abuse are a material factor contributing to his disability. See 20 C.F.R. § 404.1527(d)(2). Nor does the ALJ does cite to any document from the record, or any medical opinion concluding that the Plaintiff has a chronic drug or alcohol abuse problem contributing to his disability. See Goldthrite v. Astrue, 535 F. Supp. 2d 329, 334 (W.D.N.Y. 2008).

In the absence of a medical opinion to support the ALJ's decision, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion...[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983).

Moreover, the ALJ gave no "good reason" for discounting Dr. Beckett's and Dr. Bavibidila's opinions, and failed to discuss the required factors for determining what weight to give the

opinion. (Tr. at 22); see Shaw, 221 F.3d at 134.  The ALJ placed undue weight on Plaintiff's prior alcohol use and failed to give proper weight to the extensive medical history of continuous treatment to a combination of serious medical problems by treating physicians, Dr. Beckett and Dr. Bavibidila.  In so doing, she committed error warranting reversal since her decision denying a finding of disability was not supported by substantial evidence.

The Plaintiff has met his burden of proving that alcoholism or drug use was not a contributing factor material to determining his disability within the meaning of the Act.  See Brueggermann v. Barnhart, 348 F.3d 689 (8th Cir. 2003).

Based on a review of the entire record, this Court finds that the ALJ erred in failing to give controlling weight to Dr. Beckett's and Dr. Bavibidila's opinions.

**The ALJ incorrectly evaluated the Plaintiff's credibility.**

This Court finds that the ALJ did not properly evaluate the testimony of Plaintiff and the medical evidence in finding that Plaintiff is not disabled under the act.

Once an ALJ determines that an applicant suffered from a medically determinable impairment that could reasonably be expected to produce a claimant's pain and other symptoms, he is required to evaluate the intensity of these symptoms by the following factors: (i) daily activities; (ii) the location, duration, frequency, and

intensity of the claimant's pain and other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medications taken to alleviate this pain or these symptoms; (v) other treatment used for relief of these symptoms; (vi) any other measures used to relieve the pain or symptoms; (vii) other factors regarding your restrictions or limitations due to pain or symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-07P.

"The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). If the ALJ finds the Plaintiff's testimony not credible, the ALJ must give specific reasons for the weight accorded to Plaintiff's testimony. Bennett v. Astrue, 07-CV-0780 NAM, 2010 WL 3909530, *9 (N.D.N.Y. 2010). Here, at Step Two of the sequential evaluation, the ALJ determined that Plaintiff suffered from severe impairments, including both degenerative and discogenic disorders of the back, affective disorders, depression, and drug addiction/alcohol abuse. (Tr. at 18). However, the ALJ failed to analyze the requisite factors for evaluating the intensity of the symptoms related to these impairments.

It is worthy to note that at the outset of Plaintiff's testimony, the ALJ clearly indicated a predisposition evidenced in

her questioning that the Plaintiff's disability was caused by his
drug and alcohol abuse. Immediately after Plaintiff was sworn in,
the ALJ asked:

> Q:   When is the last time that you had a, a drug screen
>      Mr. Jackson?
>
> A:   I think when I was working for the Town in Gaines
>      (sic)
>
>                    ...
>
> Q:   Okay. . . . When is the last time, Mr. Jackson,
>      that you had any nonprescribed substances?
>                    ...
>
> A:   Oh, drugs, it's been it's been ... for the last 3
>      years or so.
>                    ...
>
> Q:   Okay. And what about alcohol?
>
> A:   You know, I had, I had, I had a beer at the,  when
>      we had my son's 25th birthday - I had a couple of
>      beers.
>                    ...
>
> Q:   And you don't abuse drugs?
>
> A:   No.  That's been years ago.

(Tr. at 448-450).

The ALJ concluded that although Plaintiff's treating
physician, Dr. Beckett indicated in a July 13, 2007 statement that
the claimant is totally disabled and has been so since January 19,
2004; and that neither alcohol nor drug use has significantly

17

caused any portion of the claimant's disability. . . . "The Administrative Law Judge gives little weight to this opinion because there is no evidence showing that the claimant has overcome his chronic/alcohol addiction." (Tr. at 22.)

The ALJ did not discuss any other reasons for her credibility determination that Plaintiff's addiction to drugs contributed to his disability.

The record is replete with objective medical evidence establishing Plaintiff's disability.    On November 6, 2006, when the patient was seen by Dr. Bavibidila, his medical condition was as follows:

- He presented a complex medical history including recurrent arterial thrombosis involving both femoral arteries and also involving his left brachial artery, status post umbilectomy.
- History of chronic low back pain, status post acute renal failure with acute myopathy requiring emergency hemodialysis.
- History of non-ischemic cardiomyopathy.
- History of obstructive sleep apnea who was complaining of feeling poorly.
- He is also blind in his left eye and complains of fatigue, cannot walk upstairs, and wants to apply for Social Security benefits.

The ALJ failed to consider any of the medications that Plaintiff was prescribed during the relevant period, for both his psychiatric and physical impairments. See (Tr. at 344)(listing four medications

for psychiatric needs and five medications for Plaintiff's physical needs).  His medications are (Tr. at 390):

- Felodipine
- Lisinopril
- Clonidine
- Metoprolol
- HCTZ
- Hydralazine
- Coumadin
- Pietal
- Prozac

The Plaintiff was seen by Dr. Melvin Zax, PhD. for a consultative psychiatric examination on May 8, 2003.  He concluded, "it is hard to be terribly optimistic about his prognosis, but I would say that it is fair to poor."  (Tr. at 224.)

In conclusion, the ALJ made a generalized unsupported statement for her credibility findings and, in doing so, failed to take into account the substantial medical evidence in the record support Plaintiff's disability.

The records also document his seeking eye treatment with Dr. James Reynolds, O.D., June through December 2006, who noted occlusion with reduced visual acuity in the left eye.  (Tr. at 267, 271.)  Essentially, Jackson had blood clots and was prescribed Coumadin.

In sum, the record reveals that the plaintiff was diagnosed and treated for multiple severe medical problems which are well

documented in the record by doctors' reports.  (Tr. at 149-2007.)
He was treated for hypertensive cardiovascular disease, congestive
heart failure, adult onset diabetes mellitus, acute renal failure
caused by intervenous dye, back pain caused by spine abnormalities,
disc bulging L4-5.  He sustained retinal vein occlusion with loss
of vision to the left eye.  (Tr. at 267.)   His treating doctor
found him to be "disabled."  (Tr. at 325-26, 338-39.)

     Plaintiff was diagnosed with serious back problems, a blood
deficiency which causes thrombosis (blood clots) which required
surgery in the past for their removal. He also has hypertensive
cardiovascular disease, and congestive heart failure.  A diagnosed
protein C+S deficiency is indicative that he is subject to blood
clots which require treatment by appropriate medication (Coumadin)
and followed by continual doctor care.

     The combination of these medical impairments, which are
supported by the record, and the opinions of his treating
physicians provides substantial evidence to support a finding of
disability.  It was error for the ALJ not to give controlling
weight to the opinions of Plaintiff's treating physicians.
(Tr. 22.)

     The ALJ placed improper emphasis on plaintiff's prior drug and
alcohol use and justifies this finding based on her conclusion that
plaintiff was not credible.  In doing so, the ALJ did not give
proper weight to the extensive medical history of Plaintiff by his

treating physicians.   Clearly, Plaintiff's limitations are disabling and the Plaintiff would be considered disabled independent of any past drug or alcohol use which is not a contributing factor material to the determination of his disability.  <u>See</u> 20 C.F.R. § 404.1535ii).

## CONCLUSION

This Court finds that the Commissioner's decision to deny SSI benefits was not supported by substantial evidence in the record. The record contains substantial evidence of a disability such that further evidentiary proceedings would serve no purpose. I therefore grant judgment on the pleadings in favor of Plaintiff and remand this matter to the Social Security Administration for the calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          January 17, 2012